```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


UNITED STATES              )
                           )
          Plaintiff,       )   Criminal Action NO.
                           )   07-30038-DPW
     v.                    )
                           )
MICHAEL A. CROOKER,        )
                           )
          Defendant.       )
                           )
                           )
```

MEMORANDUM AND ORDER
January 18, 2011

Defendant Michael A. Crooker, alleging violation of the Speedy Trial Act, 18 U.S.C. § 3161, has moved to dismiss this case against him with prejudice.

**I. BACKGROUND**

The relevant procedural and factual background is not in dispute and involves two separate indictments arising in the Western Division of this Court, one brought in 2004, Criminal Action Number 04-30034-MAP (the "2004 Indictment"), and the other — the instant case now assigned to my session in the Eastern Division — Criminal Action Number 07-30038-DPW (the "2007 Indictment").

In July of 2006, a jury convicted Crooker on the 2004 indictment of "causing a firearm to travel in interstate commerce after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year." Crooker was sentenced to 262 months of imprisonment and appealed his conviction to the

First Circuit, challenging the denial of various motions to suppress and whether the weapon at issue was within the statutory definition of firearm.  Last year, the First Circuit, without reaching the suppression issues, vacated the conviction finding that the weapon at issue was not a firearm within the meaning of the statute of conviction.  *See United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010) (per curiam).

In late 2007, while Crooker's appeal of the 2004 indictment conviction was pending, the government obtained the indictment at issue in the present case.  After the indictment was unsealed on January 28, 2008, Crooker, who was then incarcerated out of state on the 2004 indictment, made a written waiver of his appearance at arraignment, pursuant to Fed. R. Crim. P. 10(b), and requested the Court enter a plea of not guilty.  The arraignment was conducted on March 3, 2008 before Magistrate Judge Neiman, with Crooker's counsel present on his behalf.  Although the government orally moved for detention at that time, the parties and the Court agreed that, while the motion would be allowed to permit a detainer to enter, a hearing would not then be conducted regarding Crooker's detention on the 2007 indictment.  That hearing presumably would not occur until such time as the potential for Crooker's release from custody on the 2004 indictment was clarified by resolution of the pending appeal.

Because Crooker's pending appeal to the First Circuit challenged certain searches also relevant to the charges in the 2007 indictment, the parties jointly requested successive exclusions of time under the Speedy Trial Act in anticipation of that decision.[1]  Magistrate Judge Neiman and District Judge Ponsor issued orders granting the requested exclusions as continuances in the interest of justice authorized by 18 U.S.C. § 3161(h)(7) (formerly codified at 18 U.S.C. § 3161(h)(8)).[2]

The last formal order of excludable delay on the 2007 indictment was entered by Judge Ponsor on April 8, 2010 for the time period of April 1, 2010 to June 30, 2010.  Dkt. No. 33.  On June 18, 2010, the First Circuit issued its decision ordering a judgment of acquittal on the 2004 indictment.  *Crooker*, 608 F.3d at 99-100.

---

[1] *See* Joint Mem., Dkt. No. 10 (May 20, 2008); Joint Mem., Dkt. No. 14 (July 15, 2008); Assented Mot. for Designation of Case as a "Complex Case" & for Excludable Delay, Dkt. No. 22 (Oct. 30, 2008); Second Assented Mot. for Designation of Case as a "Complex Case" & for Excludable Delay, Dkt. No. 24 (Mar. 31, 2009); Third Mot. for Designation of Case as a "Complex Case" & for Excludable Delay, Dkt. No. 28 (Oct. 1, 2009); Status Report & Mot. for Excludable Delay, Dkt. No. 30 (Jan. 8, 2010); Status Report & Mot. for Excludable Delay, Dkt. No. 33 (Apr. 7, 2010).

[2] Order of Excludable Delay, Dkt. No. 13 (May 22, 2008); Order of Excludable Delay, Dkt. No. 16 (July, 17, 2008); Electronic Order Granting Excludable Delay (Nov. 24, 2008); Order of Excludable Delay, Dkt. No. 29 (Oct. 8, 2009); Order of Excludable Delay, Dkt. No. 31 (Jan. 29, 2010); Order of Excludable Delay, Dkt. No. 33 (Apr. 8, 2010).

Judge Ponsor scheduled a status conference for July 1, 2010, but held an impromtu conference on June 22, when Defendant's counsel was in his courtroom on another matter and counsel for the government in the prior case was also available. That same day, the government filed a written motion for detention, Dkt. No. 34, and a separate motion for issuance of an arrest warrant, Dkt. No. 35. Judge Ponsor issued an arrest warrant on June 30 and recused himself from the case on July 1. At the time of Judge Ponsor's recusal, a number of motions were pending, including the written motion for detention, Dkt. No. 34. Judge Ponsor stated in his recusal order that "[t]hese motions, whose pendency will stay the Speedy Trial clock, may be taken up by the new presiding judicial officer."[3] Order of Recusal, Dkt. No. 42.

This case was transferred to my session on July 1, and I referred the motion for detention to Magistrate Judge Bowler for a hearing. Crooker thereafter submitted *pro se* a demand for a speedy trial and motion to dismiss due to deprivation of speedy trial, Dkt. No. 44 (July 6, 2010), and a renewed demand and motion to the same effect, Dkt. No. 46 (July 21, 2010). For its

---

[3] Unlike in the previous orders, Judge Ponsor did not grant a continuance under 18 U.S.C. § 3161(h)(7), which must be based on a finding that the "ends of justice served" by the continuance "outweigh the best interest of the public and defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Rather, the order reflects an understanding that motions were still pending and therefore automatically tolled the speedy trial clock under 18 U.S.C. § 3161(h)(1)(D).

4

part, the government moved to strike these *pro se* submissions. Mot. to Strike, Dkt. No. 48 (July 28, 2010). In addition, the parties filed a joint renewed application for writ of habeas corpus ad prosequendum on July 20, requesting that the U.S. Marshals Service be directed to transport Crooker, who was incarcerated out of state, to this District.

On August 12, the First Circuit issued its mandate requiring entry of the judgment of acquittal on the 2004 indictment. On August 30, in order to monitor the progress of the Defendant's transport, I ordered the government to submit weekly status reports until the defendant made a physical appearance in this District. Meanwhile, the judgment of acquittal on the 2004 indictment was entered in this court on September 9. That judgment set in motion the release of Crooker from the Bureau of Prisons on the 2004 indictment and his movement to this District for prosecution of the 2007 indictment. The detention hearing on the 2007 indictment was initially scheduled for September 27, but the Defendant moved on September 24 to reschedule it for a later date. The hearing was ultimately set down for October 6 before Magistrate Judge Bowler.

On October 6, Crooker filed an emergency motion requesting a stay of the detention hearing, which was granted by Magistrate Judge Bowler. Crooker subsequently submitted a motion appealing an order by Magistrate Judge Bowler, made at the recommendation

5

of the U.S. Marshals Service, requiring Crooker to appear at the detention hearing in full restraints. Dkt. No. 57. I held a hearing regarding the issue on November 8 and directed that the Defendant appear in proceedings before me without restraints. At the November 8 hearing, a date was set for the consideration of pending motions, including the motion for detention, and a pretrial and trial schedule was agreed upon by the parties.

## II. ANALYSIS

In moving to dismiss the charges against him with prejudice for alleged violations of the Speedy Trial Act, Crooker argues that the Act was triggered by his arraignment on March 3, 2008. He does not, however, challenge the exclusion of time from his arraignment until June 30, when the last order of excludable delay expired. Rather, in the motion now before me, he asserts that at least 86 days of non-excluded time passed between June 30 and September 24, when the Defendant submitted a motion to reschedule the detention hearing originally scheduled for September 27.[4]

---

[4] As noted *supra*, Crooker submitted on his own behalf demands for a speedy trial and motions to dismiss. Dkt. Nos. 44 & 46. Because Crooker was represented by counsel at the time he submitted those documents, and because his counsel thereafter submitted a motion regarding the issues which conflicts in certain respects with Crooker's *pro se* motions, I have declined, with the agreement of Crooker and his counsel, to consider Crooker's motions separately. To regularize the record, I now DENY Crooker's *pro se* motions to the extent they are inconsistent with the Speedy Trial motion filed by Crooker's counsel, and DENY the government's Motion to Strike (Dkt. No. 48) as moot.

6

The government argues that Crooker's initial appearance for Speedy Trial Act purposes occurred on November 8, 2010, which was the first time he physically appeared in this District with respect to the instant indictment, and that the orders excluding time from the date of arraignment were unnecessary. In the alternative, the government argues that the time at issue is excluded because it was a "delay resulting from any pretrial motion." 18 U.S.C. § 3161(h)(1)(D).

### A. *Appearance Under the Speedy Trial Act*

In cases where a plea of not guilty is entered, the Speedy Trial Act requires that a trial "commence within seventy-days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Although the Speedy Trial Act sets a seventy-day baseline for the period between publication of the charging document or the initial appearance, whichever occurs last, and the trial, it also provides various grounds for excluding time from the seventy-day computation. 18 U.S.C. § 3161(h).

In order to calculate the number of days that have elapsed for Speedy Trial Act purposes I must first determine whether Crooker's waiver of appearance at his arraignment nevertheless constituted an "appearance" under the Act starting the seventy-day clock. The language in the Speedy Trial Act does not

7

explicitly require a physical appearance by a defendant to trigger its applicability, and the common use of the term "appearance" in the context of legal proceedings does not necessarily imply physical presence.[5]  "An appearance may be expressly made by formal written or oral declaration, or record entry, or it may be implied from some act done with the intention of appearing and submitting to the court's jurisdiction."  4 AM. JUR. 2d *Appearance* § 1, at 620 (1995) *quoted in* BLACK'S LAW DICTIONARY 107 (8th ed. 2004).  Crooker's 2008 motion to waive his physical presence, in which he "affirms that he has received a copy of the Indictment, that he requests the Court to waive his appearance at the arraignment, and that he requests that the Court enter a plea of not guilty on his behalf," evinces a clear intention to submit to this Court's jurisdiction without making an appearance in person.  At the arraignment itself, Crooker's counsel appeared on his behalf and represented his interests.

The absence in the Speedy Trial Act of an explicit reference to physical presence contrasts with the Federal Rules of Criminal

---

[5] When that usage does require physical presence, it is generally apparent.  For example, in the August 30, 2010 electronic order requiring weekly status reports regarding Crooker's release from BOP custody and transport to Massachusetts, I directed that the reports continue "until the defendant makes his appearance in this District."  Since Crooker had not yet been present in the District following the 2007 indictment and had previously waived his "presen[ce] for the arraignment" for Fed. R. Crim. P. 10(b) purposes, it is apparent that "appearance" in the context of my order meant physical presence.

8

Procedure which clearly state when a physical presence of a defendant is required. *See generally* Fed. R. Crim. P. 43. In cases involving a waiver of appearance at arraignment, the common practice of courts (although none have thoroughly analyzed the issue) is to treat the waiver as a Speedy Trial Act "appearance." *See, e.g.*, *United States v. Garcia*, 995 F.2d 556, 559 n.7 (5th Cir. 1993) (per curiam) ("Because Garcia waived his right to appear at his arraignment, we must treat his waiver as tantamount to a first appearance."); *United States v. Armann*, No. 10-CR-156, 2010 WL 3743638, at *2 (E.D. Wis. Sept. 22, 2010) (explaining that permitting an incarcerated defendant's appearance at arraignment by video conference or waiver of appearance would have Speedy Trial Act clock implications due to the length of time required to transport him to the district); *United States v. Hernandez-Amparan*, 600 F.Supp.2d 839, 841 (W.D. Tex. 2009) (finding that "the Speedy Trial Act began to run on the" date that defendant's "Waiver of Appearance was filed"); *United States v. Luedecke*, No. 06-CR-099-JD, 2006 WL 2040132 (D.N.H. July 20, 2006) (calculating the seventy day period from the waiver of formal arraignment on the first of two indictments).

While the issue is not free from doubt, given the lack of explicit language in the Speedy Trial Act, the obvious purposes of the Act are best advanced[6] by finding that the speedy trial

---

[6] By contrast, I note that the government's reading of the Act would potentially result in the inapplicability of the Act

clock started at the date of arraignment, March 3, 2008, albeit pursuant to Crooker's waiver of his physical presence at that proceeding.

## B. *Exclusion of Time After Filing of Motion for Detention*

Having determined that the Speedy Trial Act applied to all time that has elapsed since the March 3, 2008 arraignment — and was not triggered at the November 8, 2010 hearing before me — I now turn to the calculation of how many days between June 30, 2010 and September 24, 2010 are excluded from the seventy days allowed to elapse prior to the start of trial.

The Speedy Trial Act excludes the "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). This provision has been interpreted to mean that (1) if a motion requires a hearing, all time from filing through the hearing is excluded, and (2) if no hearing is required the motion must be "promptly disposed of" and the time prior to that prompt disposition is excluded. *Henderson v. United States*, 476 U.S. 321, 329 (1986). Courts are limited in the time they may take to consider a motion because

---

for certain defendants who waive their appearance. If, for example, a defendant has waived appearance at arraignment and there is no need for a detention hearing or other pretrial hearings requiring the defendant's presence, the Speedy Trial Act would not be triggered prior to the start of the trial, even though the defendant has been arraigned.

the Act excludes only the "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H). That is, "[o]nce the motion is 'actually under advisement,' the trial court has up to 30 excludable days to decide it." *United States v. Scott*, 270 F.3d 30, 55 (1st Cir. 2001). For motions that require a hearing, a court must decide the motion within thirty days of the hearing; for matters decided on the papers alone, the decision must be made within thirty days of the last submission. *Id.* at 56 (citing *Henderson*, 476 U.S. at 329). However, "the time between the filing of the motion and the hearing on the motion, and the period of time to obtain additional filings needed for disposition of the motion" are "periods of exclusion . . . which are unrestricted in time" and thus not subject to the thirty day time limit. *Id.*

It is generally unnecessary to inquire into the cause or magnitude of the delay resulting from motions, apart from applying the thirty-day limit on motions under advisement. "[T]he pendency of a pretrial motion is excludable time regardless of its type or its actual effect on the trial." *United States v. Hood*, 469 F.3d 7, 10 (1st Cir. 2006). In particular, when a hearing is required, the Act "excludes the time between the filing of the motion and the hearing on that

11

motion, even if the delay is overlong, inexplicable, or unreasonable." *United States v. Staula*, 80 F.3d 596, 601 (1st Cir. 1996); *see also United States v. Salimonu*, 182 F.3d 63, 69 (1st Cir. 1999) ("[A]s long as a hearing on the motion is to be conducted before trial, the delay until the hearing automatically should be considered delay 'resulting from' a pretrial motion.").

In his reply, the Defendant does not argue that the government's June 22, 2010 motion for detention would not normally toll the speedy trial clock. Rather, he contends the motion was a pretext and "did not seek any relief that the government was not already entitled to." As a general proposition, Defendant is correct in contending that "neither counsel nor district courts may employ measures for excluding time from the speedy trial clock that impermissibly frustrate the [Speedy Trial Act]'s purpose of protecting the shared interest of criminal defendants and the public in bringing criminal charges to the bar of justice as promptly as practicable." *United States v. Richardson*, 421 F.3d 17, 29 (1st Cir. 2005) (internal quotation omitted). However, there is no indication that the June 22 motion for detention was an impermissible measure for excluding time.

First, the June 22 motion was designed to secure Crooker's continued detention after his acquittal in the 2004 case. Although the government made an oral motion for detention at the 2008 arraignment, the motion was only provisionally and partially

decided for purposes of securing a detainer.  Fully considered
relief awaited an actual hearing when Crooker was physically
present in the District of Massachusetts.  When Crooker's
arraignment occurred in 2008, there was no immediate need to hold
a detention hearing on the 2007 indictment given Crooker's
incarceration on the 2004 indictment.  Thus, deferral of the
actual hearing in these circumstances was consistent with the
First Circuit's observation in *United States v. King*, 818 F.2d
112, 114 (1st Cir. 1987) (per curiam), that "conducting the
defendant's detention hearing . . . when his release from state
prison [is] imminent" rather than at the time of indictment
"comports fully with the policies undergirding" the Bail Reform
Act's hearing requirement in 18 U.S.C. § 3142(f).

    Second, at the June 22 status conference, Judge Ponsor
discussed the unusual circumstances and attendant procedural
issues and concluded that, if the government wished to press
Crooker's detention in the instant matter, it was required to
make a motion for detention.  Judge Ponsor also noted that he
would likely treat the motion as a motion for detention pending a
hearing.  Crooker was given an opportunity to oppose the motion
and his counsel did so by arguing, among other things, that the
motion was premature and should not be considered until Crooker
was "physically before the Court and bail proceedings are

properly commenced."[7]  Thus, in his opposition, Crooker not only acknowledged that a hearing was proper, but demanded such a hearing for the appropriate consideration of detention issues.

The record does not support the conclusion that the government's written motion on June 22, 2010 reviving the 2008 request for a hearing served as a pretextual justification for tolling of the speedy trial clock.  The discussion at the status conference demonstrates that the government's legitimate purpose in submitting the motion was to ensure the necessary procedural steps were in place to secure Crooker's continued detention in this case upon his acquittal in the 2004 case.

For purposes of calculating the Speedy Trial Act time period, I conclude all the time until a holding of a detention hearing on December 2, 2010, when I conducted that hearing and ordered Crooker detained, should be excluded under 18 U.S.C. § 3161(h)(1)(D).[8]

---

[7]  Judge Ponsor effectively granted Defendant's request to defer ruling when he recused himself from the case without resolving the motion for detention.

[8]  I need not therefore consider whether other motions submitted by the parties on and after June 22, 2010 could also serve as separate bases for excluding most or all of the time that elapsed between June 22 and December 2.  Further, it is unnecessarily duplicative to apply excludable time for delay attributable to Crooker's transportation from the Federal Correction Institute in Loretto, Pennsylvania to the Wyatt Detention Facility in Rhode Island for his appearance in this action.  Ten days of delay attributable to this transfer would be independently excludable under 18 U.S.C. § 3161(h)(1)(F).

14

### III. CONCLUSION

For the reasons set forth more fully above, I DENY the Defendant's motion to dismiss (Dkt. No. 58) and find that, as of December 2, 2010, no non-excludable days have elapsed, and seventy days remained for purposes of compliance with the Speedy Trial Act.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE